Scott, J.
The mortgages drawn in question in this case, purport to convey the entire title, interest, and estate of the corporation executing them, without any express restriction, reservation, or limitation whatever.
And it is claimed by counsel for the mortgagees, that independently of the act of March 21, 1851, the corporation had power to borrow money and execute such general mortgages, by the terms of its original charter and other subsequent acts, passed prior to 1851. Be this as it may, however, those prior enactments were, by their own terms, made subject to alteration and amendment.
The act of 1851 was a substantial reorganization of the medical college. By it eleven persons therein named, and their successors, were constituted a board of trustees of the Medical College of Ohio • and by that name were invested with corporate powers.
The first and main section of the act, provides that this board, by its corporate name, “ shall have power to contract and be contracted with, sue and be sued, to answer and be answered unto, in all courts of law and equity, for the period of ten years from the 1st day of January, 1851, or until their successors are appointed, and to mortgage the property now known as the Medical College of Ohio : provided, that in the event of the mortgage of said property, the proceeds thereof shall bo appropriated to the erection of a building, on the lot on which the present building is erected, in which shall be taught regular scientific medicine, as contemplated in the various acts creating the medical college; and, provided further, that no sale of said property, by reason of said mortgage, or otherwise, shall imjDair the right of the state to the medical attendance now by law provided and required for the Commercial Hospital and Lunatic Asylum at Cincinnati; provided, the State of Ohio shall, in no event, be held liable for or required to pay any money in consequence of the provisions of this act; and provided, *58 moreover, that the premises so authorized to be mortgaged, shall ever be occupied and used *for the purposes of a medical college, as contemplated by the acts relating to the Medical College of Ohio; and the professors and faculty of medicine, hereafter so using and occupying said premises, shall always furnish medical and surgical attendance at the Commercial Hospital and Lunatic Asylum; provided, also, that the trustees of said college may, for fifteen years, and thereafter, unless otherwise provided by law, lease out such parts of said premises and the buildings thereon as may not be necessary for the purposes of said college; provided, also, that all moneys arising from leases so authorized, shall be appropriated, after paying the sum for which said premises may be mortgaged, as hereinbefore authorized, in manner hereinbefore specified, in promoting the objects of said college in such manner as said trustees may deem proper; or as may be provided by law.”
Section 2 provides for filling vacancies in the board of trustees; section 3, that all rents and graduation fees thall be applied to the payment of the debt created in erecting the buildings; and section 4 repeals all acts and parts of acts conflicting with this act. 49 Ohio L. 295.
It is clear that the board of trustees, by whose authority these bonds and mortgages were executed, derived their power to act in the premises, solely from this act of 1851. The mortgagees themselves refer expressly to this act, and represent the issuing of the bonds and the making of the mortgages to be in execution of the powers therein conferred. The mortgages must therefore be construed with reference to the limitations, if there be any, which qualify the power of mortgaging, granted by the act of 1851.
The first section of that act, just quoted, contains six provisos, so called; and it is claimed in behalf of the plaintiff in error, that, by virtue of the fourth of these provisos, the board of trustees had no power to mortgage the premises so as, in any event, to justify a sale, without reserving to the corporation the right forever to occupy and use the building erected thereon, or so much thereof as may be necessary, for the purposes of a medical college. To this claim, interposed by way of defense in the court below, the bondholders, who were there plaintiffs, demurred. The question was thus raised as *to the proper construction and effect of this proviso or clause; and this is the question upon which the judgment to be rendered here must depend.
*59 It is certain that the whole section is inartistically and unskillfnlly drawn. To make the literal sense of the terms of its numerous provisos harmonize with each other, and with what seems to be the purview and main purpose of the enactment, is simply impossible. We may well be contented if, in such a case, we can arrive at a satisfactory conclusion as to what was not intended, without assuming to determine with confidence what was the actual intention. In giving a construction to the fourth proviso, on which the claim of the plaintiff in error is based, it is proper to consider it in connection with the other provisions of the same section; for “ it is an established rule in the exposition of statutes, that the intention of the lawgiver is to be deduced from a view of the whole, and of every part of the statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms.” 1 Kent, 462. In looking to the body of the section, then, we find a grant of power to the board of trustees, “ to mortgage the property now known as the Medical College of Ohio.” The property thus described is the same as that embraced in the present mortgages, and the power is not limited to a part, but extends to the whole of it. This ijower was clearly intended to be exercised for the purpose and as a means of raising money for the erection of a suitable building to be used as a medical college. The first proviso imposes on the corporation, as a condition subsequent, the obligation to appropriate the moneys obtained by means of the power thus given, to that object. We may reasonably assume that the word “mortgage” was used by the legislature in its ordinary, well-understood, and common-law sense; and tliat the ordinary legal liabilities incident to a mortgage were intended to follow the execution of the power conferred. Prominent among these liabilities is the sale of the mortgaged premises, in default of the payment of the debt for which they are a security. Indeed, it was evidently contemplated that a sale of the property might result from its being mortgaged; for the second proviso ^declares “that no sale of said property, by reason of said mortgage, or otherwise, shall impair the right of the state to the medical attendance now by law provided and required for the Commercial Hospital and Lunatic Asylum at Cincinnati.”
Now, a bona fide sale has always been supposed to confer some rights upon a purchaser. Ordinarily, upon the payment of the *60 purchase money, he becomes at least the equitable owner of the property purchased, and must, either presently or in the future, become entitled to its possession and use. If these are to remain forever in the vendor, it would be absurd to call the transaction a sale.
If, then, the fourth proviso is to be construed (according to the claim of the plaintiff in error) as a limitation or exception to the power of mortgaging, this limitation, in terms, includes the whole grant; and if effect is to be given to it according to its terms, it utterly nullifies the whole grant. For it provides that the identical premises which are authorized to be mortgaged, “shall ever be occupied and used for the purposes of a medical college.” If effect be given to this clause, as a limitation in favor of the mortgagor, what interest in the property would pass to the purchaser by a sale under the mortgages? Absolutely none. The property mortgaged must “ ever be occupied and used ” by the mortgagor, notwithstanding the sale. We are not to attribute to the legislature a covert intention, which, if clearly expressed, must have rendered the grant of power wholly nugatory.
But, on behalf of the plaintiff in error, it is claimed that this clause may reasonably be so construed as to except from the operation of the mortgages only so much of the buildings and premises as may be necessary for the purposes of a medical college. Such an exception must, from the nature of the case, consist of an uncertain and variable quantity, depending on the number of the students attending the institution, and the extent of the facilities and advantages to be furnished in the prosecution of their appropriate studies.
The building to be erected from “ the proceeds ” of the mortgage, might be so constructed that every part of it would be necessary for college purposes, and illy adapted for other uses; and it is incredible that the legislature, or the ^trustees of the college, should have expected that funds would be invested on the faith of a security so uncertain, which might amount to something or nothing, at the pleasure of the mortgagor.
Besides, if this fourth proviso is to be construed as securing to the plaintiff (notwithstanding a sale under the mortgage) the perpetual occupancy and use of so much of the premises as are necessary for college purposes, how shall we escape from the conclusion that the next proviso equally secures and subjects the residue of *61 the premises to the perpetual control of the same party ? It provides “ that the trustees of said college may, for fifteen years, and' thereafter, unless otherwise provided by law, lease out such parts of said premises and the buildings thereon, as may not be necessary for the purposes of said college.” A construction which would thus leave nothing to be affected by the mortgage is wholly inadmissible. Neither of these two clauses or provisos expressly qualify or limit the power to mortgage, nor do they refer, in any way,, to the exercise of that power, thotigh the former of them, by way of description merely, speaks of “the premises so authorized to be mortgaged.”
The question is, therefore, one of construction, and we should adopt that one which is most reasonable and consistent with the-purview of the act. It is highly improbable that the fourth proviso was intended to prohibit the alienation of the property known as “the medical college,” or to confine the corporation to that particular locality for all time to come. The second proviso clearly contemplates that this property might be sold, as a result of the mortgage, “ or otherwise."
' In our opinion, none of the numerous clauses which are inartificially ushered in, and tacked on to this section by means of the oft-repeated word “provided," was designed to limit the power of mortgaging, which had been conferred in general and absolute terms. The legislature could not foresee whether the power granted would ever be exercised; and should the corporation avail itself of the grant, it was no doubt hoped and expected that the debt incurred would be discharged without a sale of the mortgaged property. These ^provisos were accordingly framed to meet either contingency, and with a view to guard against any implied liability of the state for the results. And as the corporation had been previously regarded with favor, and had received donations from the state, on account of its supposed capacity for usefulness in disseminating a correct knowledge of “ regular scientific medicine,” and thus preserving the lives and the health of the people from the dangers of quackery, empiricism, and heretical innovation of every kind in the healing art, the occasion was embraced to restrict the corporation to the salutary objects of its creation, and prevent the perversion of its corporate powers to other and less worthy purposes.
We are satisfied that the fourth proviso was not intended to- *62 qualify the power of mortgaging the whole property, nor to affect the property in the-hands of a purchaser; and that, properly construed, it was intended to be mandatory upon the corporation only, limiting, at all times, its discretion in regard to the use to which its buildings and real estate should be applied, so long and so far as the same should remain in the ownership or subject to the control of the body corporate. It is a limitation on the corporate powers, in favor of what the first section denominates “ regular scientific medicine,” as distinguished from other systems and other subjects.
This construction seems to us fairly deducible from a full consideration of the whole act, and is the only one which can be made to harmonize with the main purpose of the act and the other provisos.
The fifth proviso, which gives power to lease such parts of the premises as may not be needed for college purposes, was confessedly not intended to be operative in the event of a sale under the mortgage. And the terms of the fourth admit of the same construction, with perhaps equal facility.
It may be further observed, that the second proviso consists properly of a saving clause, by which, in the event of a sale, the right of the state to medical attendance at the Commercial Hospital and Lunatic Asylum is preserved unimpaired. The fourth proviso contains a similar saving clause, by which, according to our construction, the same right is preserved in case no sale of the property shall become necessary. Effect is *thus given to both saving clauses. But the construction claimed by the plaintiff would em: brace both cases in the saving clause of the fourth proviso, and render the second wholly useless and inoperative.
The rules of construction favor an interpretation which will give effect to every part of the enactment.
Upon the whole, we are satisfied that the construction claimed on behalf of the plaintiff in error is inadmissible; that the court below properly sustained the demurrer to the defense based on that construction, and did not err in ordei'ing a sale of the property without reservation.

Judgment affirmed.

Dat, C. J.,'and White, Welch, and Brinkerhoee, JJ., concurred.